Good morning, and may it please the Court, I am James Laughlin, and I represent the appellant Fernando Esparza. With the Court's permission, I'd like to reserve two minutes of my time for rebuttal, and I will keep an eye on my own time. The sole issue presented in this appeal is whether Mr. Esparza's possession of undistributed images counts as relevant conduct for his distribution of child pornography offense. The Court has asked us to address whether that issue has already been decided by the panel deciding Mr. Esparza's first appeal, such as the law of the case doctrine applies. At Mr. Esparza's original sentencing, the parties disputed the number of images adjustment, as they do now. The district court indicated that it was inclined to follow the government's position and impose the five-level adjustment, but it decided that it didn't really need to decide that, because at that point it had made other erroneous calculations that put the range up near the statutory max, even with the lower two-level adjustment, so it just used that. In the first appeal, I initially misread the record and argued in my opening brief that the Court erroneously applied the five-level adjustment. The government pointed out that error in their brief, and I conceded it in my reply brief, but I asked the panel to still go ahead and address the relevant conduct issue, because it was one that was likely to arise at a resentencing, given the Court's statements at the original sentencing. In that context, the panel wrote in its decision, the district court properly imposed a two-level adjustment to the offense level based on the number of images possessed. The defendant conceded the issue in his reply brief. The law of the case doctrine applies only if that statement reflects a prior panel made a ruling on the merits, granted my request for an advisory opinion, and got to the heart of whether the only the district court could only impose a two-level adjustment and no more on remand. Under the circumstances, I didn't interpret the prior panel's decision in that way. Given the reference to the issue being conceded in the reply brief, it appeared to me that the panel simply acknowledged that there was no error in what the district court had actually done, because the parties had conceded that the parties agreed that she could impose at least a two-level adjustment. And implicitly, the panel appeared not to grant my request to go further and offer an advisory opinion, thereby leaving the issue open. Of course, if the Court disagrees with me and interprets the Court's decision differently and thinks that the decision was reached on the merits, then it should vacate Mr. Esparza's sentence on that basis and remand for resentencing. Otherwise, the Court would have to reach the merits of the argument now. Turning to those, there's no dispute that possession of undistributed images can sometimes be relevant conduct for distribution purposes. The question is whether that's true, even when the government has not proved that in other words, where the government hasn't proved that subsection A2 of the relevant conduct guideline applies. The district court said that it was relying solely on subsection A1 of that guideline to count possessed images as relevant conduct. That ruling was erroneous in light of this Court's decision in the United States v. Williamson, where it held that images merely possessed by a defendant convicted of shipping child pornography do not count as relevant conduct under subsection A1. And contrary to what the government claims, that decision is not mere dicta. The Court confronted a nearly identical situation. It considered the language in subsection A1, and it held that the only distributed images and not other undistributed images could count as relevant conduct. Despite Williamson, the government contends that a temporal link is sufficient to make every image that Esparza possessed at the time he posted the 18 images or, I'm sorry, the 16 images at issue for his conviction, that it turns all of those possessed images into relevant conduct for guidelines purposes. The government concedes there has to be something more than a temporal connection for subsection A1 to apply. The problem is the government doesn't offer a workable standard for what that something more is. It says things like, well, it was the same subject matter, or the two offenses were factually germane, so that's close enough. But that vague standard fails to recognize that distribution and possession are two very different offenses. Mr. Esparza's possession of the 16 images that he actually posted would be relevant conduct to the crime of posting those 16 images. But absent a single course of conduct or a common scheme or plan, which is covered in subsection A2, his possession of other undistributed images have nothing to do with the offense of conviction. This position is most consistent with the plain language of the relevant conduct guideline. Section A1 applies to conduct that's occurred during the commission of defense in preparation for that offense on the course of attempt to avoid detection or responsibility for that offense. The later two clauses clearly define conduct that's directly connected to the offense of conviction, either before or after the offense. It therefore makes sense to also interpret the first clause to encompass only conduct occurring during the offense that's also somewhat connected to the commission of the offense. With regard to other crimes that are somewhat similar but not connected to the offense, it's subsection A2 that determines whether or not it's relevant conduct. In Williamson, the Court understood this distinction when it looked at the plain language of section A1 and easily concluded that in a distribution case, it applies only to images that were actually distributed and not to unpossessed but undistributed images. Let me ask you, isn't it correct, however, that the district court in the Williamson case only counted images that were distributed to Croatia, didn't consider the other images on the computer, and I think the appellate court acknowledged that, so in effect it never needed to reach that issue? Your Honor, that's correct, that ultimately the disputed enhancement was still upheld because after the panel deciding Williamson went through and figured out what is the relevant conduct, they said, okay, we'll look at these 19 images and this satisfies the enhancement. That does not mean that the Court's analysis up to that point was dicta or that it can be disregarded by the court. But what was it? Was there an argument before about that? The court's analysis was that the district court didn't count those other images, correct? I don't believe that. I believe that there was an allegation that the defendant thought that the other images were counted, but then, according to the appellate court decision, it appears that by the time of oral argument, the court was convinced that the enhancement was based only on the images that were distributed. And that being so, what did the Williamson court actually decide? I think that the Williamson court decided in two logical sequential steps. First, let's look analytically at what the relevant conduct is here. They looked at subsection A1 and said, what can fall under subsection A1? They concluded that in this kind of offense, it's only the images distributed. So that's part one. And then part two is like, okay, now that we're looking at – now we know what to look at, do these images satisfy the enhancement? And I think what the government tries to say is, whenever the court does that, that, well, they could have just skipped to the second part so we can ignore everything that they did before. And I think that this court's case law about what's dictated and what's not suggests that it's improper to do that. You'd be disregarding a lot of what's in published decisions if litigants could say, well, that wasn't really necessary to the decision because the court could have decided it in a different way.     And it would be inappropriate to say, well, this is a case that requires some reason to be made in a different way. Robertson. But there's no real reasoning in Williamson about this topic. Is there? They just make a statement. Well, Your Honor, I don't think it's – I think that there is reasoning. And I don't think it requires a lot of reasoning, because I think that it's – it's based on the plain language of subsection A-1. It must require some reasoning, because are there not court of appeals decisions from other circuits that come out the other way? Well, I mean, in that regard, it doesn't appear – I didn't look at them. Obviously, we're going to follow our own precedent, but it seems as if it's an issue big enough to talk about a little bit. Well, correct. Of course, my position is that those other cases are wrongly decided and muddle up something that's clear. I understand that, sir. I'm just saying, though, that if other circuits' consideration came out differently, it must be something that's worth more than one line, which is, I think, maybe about all that we've got in Williamson. Well, Your Honor, I think that what the Williamson court did was the correct approach, because what it did was it looked at the language of the statute and realized the language of the statute is pretty clear and there really isn't a lot of analysis needed. Once you don't apply the expanded relevant conduct section, you have to appreciate that subsection A-1 is really about conduct that's part and parcel or connected to the offense. It's not a statute. It's a guideline we're talking about. Correct. And that's where I think maybe the Williamson court's analysis, maybe it's correct, but I don't see much analysis. Well, Your Honor, I disagree with the suggestion that there wasn't enough analysis, perhaps. We're just wrestling with whether or not they decided this or not. That's what's important. Correct. Correct. Although I think that – I mean, I do think it's a binding decision, but even if it's not a binding decision, the rationale behind it would still be something I think this Court should follow.  We'll give you another minute or two. Thank you, Your Honor. Thank you. Good morning, Your Honors. May it please the Court. Carrie O'Neill on behalf of the United States. As to the procedural question that this Court directed us to last week, there are really two intertwined legal doctrines here, the law of the case and the rule of the mandate. And a review of both shows that the district court did not err in reexamining the plus-five number of images enhancement on resentencing. As opposing counsel pointed out, for the law of the case doctrine to apply, the issue in question must have been decided explicitly or by necessary implication in the previous disposition. And here we have neither because the specific issue of whether the plus-five enhancement was proper was not squarely before the Court and was not decided by it. And, in fact, if the Court had decided it, it would have been issuing an advisory opinion, as opposing counsel noted himself this morning. Moreover, as in Cattarino, all of the parties viewed the revamp. But I wouldn't spend much time on that issue since counsel defeated it. Yes. Exactly. And I'll move on to the substantive issue on appeal. The question for the Court is whether it's willing to draw the line around relevant conduct in a child pornography distribution case so tightly as to preclude the Court's consideration of other child pornography criminal acts, acts that violate the same The defendant argues in his brief that the government is trying to have its cake by having the defendant plead to the distribution count and eat it, too, by making the defendant responsible for all of the images that he contemporaneously possessed. That's a reasonable argument, although it doesn't necessarily represent the law. Exactly right. But since we have to follow the law, whether it seems to be rational or not, it's What do you say about the Williamson case? What's the reason for not following the Williamson case? Well, the Williamson case is factually distinct from the case at hand because in the Williamson case, the prepubescent enhancement was applied only to the 19 images that were uploaded through the server to Croatia. There was no consideration of the other contemporaneously possessed images that the defendant had, whereas here in this case, that was the factual issue before the district court, and nothing in Williamson says that you can't ever consider possessed images in relation to, as relevant conduct in relation to a distribution count. Moreover, where it did opine, it actually held that because the trafficked pictures depicted prepubescent minors, 1B1.3A1, does not exclude their consideration for enhancement purposes. Moreover, I'll note that this was, this would have been an issue of first impression in Williamson before the Ninth Circuit. And as Your Honor pointed out, there's absolutely no discussion of pre-Williamson out-of-circuit authority on the question. Why does that matter? It goes to the fact that the opinion in Williamson was casually made without analysis. Well, you know, that's, before we issue a decision that says some of our colleagues were casual and, I mean, that's, but I'm serious about that. I mean, I, there are differing views on dicta in our court, but at least from my point of view, before I say my colleagues were so casual that they ignored the law and didn't think and didn't look at the other circuits and their analysis was so shoddy that we ought to ignore it, I have to be pretty darn careful about that, at least in my mind. And I think Williamson is pretty. I would say even if I thought it was shoddy, it wouldn't matter because I may think that a lot of our decisions, they didn't, they didn't pay enough attention to other cases. But I don't think we need to reach. Let's drop that argument.  And so I don't think we need to reach. And some of our colleagues are down the hall who wrote that, so I mean, you know, they're in the building. Be careful. But Your Honor, I don't think we need to reach the question of what in the Ninth Circuit is or isn't dicta. I think just clearly it's a factually distinct case from the case at hand. What in Williamson indicates that you think that the panel viewed it as a fact-specific holding? I mean, the language they use is pretty broad. The language that they use is broad. The government is willing to concede that. But I think factually, because they were not examining and they weren't presented with, based on the record as I read it in Williamson, they weren't presented with a view that their possessed images shouldn't be considered, because as it was fleshed out in the briefs and at the oral argument, it became apparent that the enhancement, prepubescent enhancement, was only applied to the images that the defendant already had actually distributed. Therefore, when the court says that under the narrow category of relevant conduct, the district court could only consider the 19 pictures, that was the only issue before the court. And the defendant argues, oh, well, this was a fully developed argument. But actually, when you read the Williamson opinion, the court says, as to the defendant's first argument, he made absolutely no argument at all. As to his second argument, it was more fully developed. But that doesn't tell us that it was so clear or apparent to the court that he was arguing that all these other images had been relied upon for the prepubescent enhancement, and then it becomes clear that factually they weren't. And so the court's opinion, the government argues, is limited to the factual situation in that case. And that's why Williamson doesn't bind here. And that's why the government argues under A1 that it's clear under the language of A1 that the defendant's possession of child pornography occurred during his acts of distribution. Contemporaneity is not enough. But as the Seventh Circuit in Nance and Berovich and Ellison have pointed out, the possession and distribution offenses are intimately related. They violate the same statute. They have the same victims. They equally demonstrate the defendant's compulsion and proclivity to exploit sexually minors. Moreover, in this case, the government argues that there is a plus factor, there is a more factor, based on the evidence that was presented to the district court. Here, the defendant admitted to FBI agents when his house was being searched that he had been a member of these Yahoo chat groups for two years. He'd been a member of about 65 to 70 of them, had downloaded from and uploaded into. And then the government had text copies of his chats in which he is referring to his cash, his collection of CP images, offering to distribute them, and seemingly distributing them while describing them, all the while reflecting on prior abuse that he himself had inflicted. So, therefore, in this case, the facts and the nexus make his possession and distribution rather tight. And I failed to mention that two of the images that he actually distributed were found on the floppy disk that he possessed. And the defendant argues it's insignificant, but these facts, that he possessed two of the images on the floppy disk, that he was actively referring to his cash of pictures and videos, it shows here the intimate nature, beyond just the temporal significance, beyond just the fact that the violation is of the same statute and has the same victims, it's also here, factually, the district court could have found under A-1 that these are logically related crimes and they are germane to each other. Moreover, this court can also affirm the plus-five enhancement on the basis of A-2 for all the reasons set forth in the government's brief and as I've just argued. Well, the district court didn't reach that issue, so how can we? Well, as the government pointed out in its brief in United States v. Polanco, this court can affirm the district court's sentencing decision on any ground in the record. There wasn't a factual dispute as to what the facts were. So the question of whether or not the facts as presented by the government satisfied 1B1.3A2 can be determined by this court. Well, I suppose. But usually that would be within the sentencing province of the district court, wouldn't you agree? The government is not opposed to, if this court is inclined, to remand on the 1B1.3A2 issue. And the government does not believe that it would be unfair to allow the government to re-argue it. There was never a failure of proof on the issue. For example, I mean, if your opponent were to argue, well, no, we've got enough facts for you to decide this under A-2, and you should hold that A-2 doesn't apply, you wouldn't want that result. I would not want that result, Your Honor. The government would not want that result, Your Honor. And I will just point out, in regards to the A-2 analysis, and I think it also informs the A-1 analysis about sort of the interconnection here between the two offenses. Unlike Fowler in the Fifth Circuit, where the court found that the defendant's possession of the sadistic image was not part of his plan to entice a minor because the evidence showed he'd actually tried to withhold that image in his possession. Here, those facts, we just don't have those facts on this record. We have a defendant mentioning his large cache of child pornography during his Internet chats, explicitly describing the pictures. And this shows that his possession was germane to what he was doing in those chat groups in that forum. He discussed images, he offered to send images, and he sent images. So here, the government believes, under both 1B1.3A1 and 1B1.3A2, that the evidence that was presented supports the enhancement of five levels. Unless the Court has additional questions, I see I'm almost out of time.  Thank you, Your Honor. All right. We'll give you ñ well, it says one, but we'll give you two. Thank you, Your Honor. I actually have just two points I would like to make. The first is that there shouldn't ñ this idea that possessed images will never be covered in distribution cases is not really realistic here. Subsection A2 provides a basis for taking that kind of conduct into account in a distribution case. In fact, when the Sentence Commission adopted Amendment 615 in 2001, which merged or grouped 2G2.2 and 2G2.4, and this is something cited in both the government's brief and my reply brief, they said they were doing that because they wanted to encompass images often involved in the case but outside the offense of conviction so they can be considered by the Court in determining the appropriate sentence for the defendant if the conduct related to the images is part of the same course or conduct or common scheme or plan. There would be no reason to do that if subsection A1 was as broad as the government contends that it is. I think A2 is sufficient to set the standard by which you treat it. What would have happened under A2 if we were to take it up in the first instance or remand it? Well, I think that the evidence presented so far has not been sufficient to show a common scheme or plan. As a probation officer ñ So you think you have a defense under A2? Yeah. I mean, looking at it now, I mean, I understand your argument under A1 and Williamson. We have to decide what Williamson ñ the scope of Williamson means. But I thought you had a pretty tough case under A2 and that remand would seem to be somewhat pointless. Well, I disagree with that for two reasons, Your Honor. The first is the probation office vigorously argued that the government had not presented sufficient evidence to prove A2. And two, at the resentencing, the district judge specifically disavowed reliance on subsection A2. No, I understand that. Which suggests that she may not have thought that the government had ñ Hard to read too much into that, I think, one way or another. Okay. I took up your time. The one final point is that even if subsection A2 and A1 doesn't apply, that still doesn't mean that these possessed images are irrelevant for sentencing. And that's what, again, the probation office said in its report. It said that this may be a relevant sentencing factor, but contrary to what the government says, it doesn't mean it's a relevant factor in setting the offense level. And that's what the government's trying to do is take this and by whatever means necessary, make it something that affects the offense level. And that's the error here, that the case should be sent back for resentencing. Thank you, counsel. Case just argued will be submitted.
judges: Sedwick, Reinhardt, Thomas